SEALED

**FILED**
February 23, 2022
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY: _____K.G._____
DEPUTY

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### MIDLAND/ODESSA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>Plaintiff<br><br>v<br><br>MARCO PEREZ, JR<br>aka SULLY PEREZ<br><br>Defendant | **INDICTMENT**   **7:22-CR-029**<br><br>COUNTS 1-12: 18 U.S.C. § 1343 – Wire Fraud;<br><br>COUNTS 13-18: 18 U.S.C. § 1957 – Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activity;<br><br>NOTICE OF GOVERNMENT'S DEMAND FOR FORFEITURE |

**THE GRAND JURY CHARGES:**

## GENERAL ALLEGATIONS

At all times relevant to this Indictment:

Definitions:

1. A "Ponzi scheme" is a type of fraudulent scheme in which a perpetrator obtains money from victims, generally for a purported investment opportunity, but uses some or all of the money for an unrelated purpose, such as to pay the perpetrator's personal expenses or to acquire personal items, such as vehicles. When earlier victims are owed money from their supposed "investments," they are often avoided or lied to in order to avoid or delay a payout, convinced to "reinvest" their principal and illusory profits with the perpetrator, or are paid with money from later victims' "investments." Because earlier

victims often must be paid with funds defrauded from later victims, a Ponzi scheme generally requires a constant influx of new victims to be successful.

2. "Proppants" are solid materials, such as sand, that are used in fracking operations.

3. "Fracking" is a method used to extract oil and gas from underground rock formations. Fracking is performed by injecting water, chemicals, and proppants into such underground rock formations, in order to fracture the rock formations. This fracturing allows oil and natural gas to flow through the rock formations, and to ultimately be extracted to the surface, where those products can be gathered and sold. Proppants, such as sand, are used to "prop" open the fractures (that is, to keep the fractures open) while the oil and natural gas are being extracted. Although various forms of treated and untreated sand can be used for these purposes, all such forms of sand will collectively be referred to herein as "frac sand."

The Scheme:

4. Defendant Marco PEREZ, Jr., a/k/a "Sully Perez", is the founder and a director of Permian Basin Proppants, Inc. ("PBP"), which is headquartered at 701 West Indiana Avenue, in Midland, Texas, within the Western District of Texas. PBP was registered as a Texas For-Profit Corporation in 2017 and is advertised as an entity that sells proppants, namely sand, for use in "fracking" operations.

5. Between approximately September 2017 and February 2022, PEREZ used PBP to perpetuate a Ponzi scheme, whereby he solicited investor money based on misrepresentations of material facts. During this time period, PEREZ has taken in over $11,000,000.00 as part of this scheme, a vast majority of which PEREZ utilized for his own personal benefit.

6. PEREZ advanced his Ponzi scheme by offering victims the opportunity to fund or otherwise "invest" in transactions involving frac sand by executing "Joint Venture Investment Letters". These "Joint Venture Investment Letters" were based on false and misleading promises and representations, including that: (1) money provided by investors would be used by PEREZ to purchase frac sand from suppliers he had connections with in the industry at a discount, which would then be resold to entities who use frac sand to perform fracking operations, including entities operating in the Permian Basin and more specifically in the Midland-Odessa region; and (2) investors would receive a return of their entire principal plus a promised return on investment.

7. PEREZ made and directed others to make these misrepresentations knowing they were false and for the purpose of obtaining money from potential investor victims and executing "Joint Venture Investment Letters". Each "Joint Venture Investment Letter" was purported to facilitate purchase orders of a specified volume of frac sand for a specific oil and gas production company as identified in each specific contract.

8. However, PEREZ and PBP rarely if ever used the invested money to purchase frac sand or otherwise complete the promised transactions. Rather, PEREZ diverted significant amounts of the investor money to pay for his personal expenses, pay salaries for those who worked for him and/or PBP, and pay false investment returns to prior PBP investors.

9. When victim investors would ask for their promised money, PEREZ would often avoid their calls or claim to be suffering from health conditions. In other instances, PEREZ convinced his victims to "reinvest" their principal and illusory profits by rolling those profits over into another "Joint Venture Investment Letter".

Manner and Means of Wire Fraud:

10. PEREZ's scheme was furthered through use of wire communications to and from victim investors, including emails, advertising the scheme on the Internet, and use of wire transfers in interstate and foreign commerce. On at least some occasions, the "Joint Venture Investment Letters" were signed via transactions that took place via a wire, such as by sending, signing, and receiving the contracts via DocuSign.

11. On multiple occasions in furtherance of the scheme, PEREZ transmitted or caused to be transmitted in interstate and foreign commerce signals via wire to investors and potential investors containing material misrepresentations of fact, such as contracts and promotional materials that included false material representations and promises, and account statements that also included false material representations.

12. On multiple occasions in furtherance of the scheme, PEREZ caused investors to transmit money to bank accounts and cryptocurrency accounts that were controlled, either directly or via PBP, by PEREZ (collectively, "PEREZ's bank accounts"), where such transmissions occurred via wire communications and involved materials that traveled in interstate and foreign commerce, including writings and signals pertaining to monetary transactions and/or cryptocurrency transactions.

Manner and Means of Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activity:

13. During PEREZ's scheme he knowingly engaged in monetary transactions in excess of $10,000 within the United States, including purchasing luxury vehicles, property, and vacations, and paying false investment returns to prior PBP investors.

14. On multiple occasions in furtherance of the scheme, PEREZ engaged in monetary transactions that occurred within the United States and had a value greater than $10,000, and did so knowing that the monetary transactions involved money that was criminally derived from the Ponzi scheme and wire fraud described herein. For instance, on multiple occasions within the course of PEREZ's scheme, PEREZ would induce a victim investor to make a large deposit into one of PEREZ's bank accounts, often via wire, and PEREZ would then use at least a portion of that money to purchase a luxury vehicle or other item with a value in excess of $10,000 shortly after the victim money was deposited, and often even on the very same day.

15. On other occasions within the course of PEREZ's scheme, PEREZ would induce a victim investor to make a large deposit into one of PEREZ's bank accounts, often via wire, and PEREZ would then use at least a portion of that money to provide a payout in excess of $10,000 to another investor in PEREZ's scheme, and would do so shortly after the victim money was deposited, sometimes even on the very same day.

## COUNTS ONE THROUGH TWELVE
[18 U.S.C. § 1343]

16. The allegations contained in paragraphs 1 through 15 of this Indictment are incorporated by reference as if fully set forth herein.

17. On or about the dates set forth below, in the Western District of Texas and elsewhere, the Defendant,

**MARCO PEREZ, JR., AKA SULLY PEREZ**

knowingly and with the intent to defraud, devised and executed the above-described scheme to defraud multiple investors known to the Grand Jury and to obtain money or property by means of materially false or fraudulent pretenses, representations, and promises, intentionally and

knowingly transmitted and caused to be transmitted by wire in interstate commerce writings, signs and signals, as set forth below:

| Count | Victim Investor(s) | Date | Amount Wired |
|---|---|---|---|
| 1 | Victim Investor #1 | April 2019 | $100,000 |
| 2 | Victim Investor #2 | May 2019 | $100,000 |
| 3 | Victim Investor #3 | May 2019 | $100,000 |
| 4 | Victim Investor #4 | May 2019 | $75,000 |
| 5 | Victim Investor #5 | July 2019 | $178,200 |
| 6 | Victim Investor #6 | October 2019 | $150,000 |
| 7 | Victim Investor #7 | January 2019 | $230,500 |
| 8 | Victim Investors #8 and #9 | May 2019 | $200,000 |
| 9 | Victim Investors #10 and #11 | October 2018 | $65,000 |
| 10 | Victim Investors #10 and #11 | October 2018 | $220,000 |
| 11 | Victim Investor #12 | November 2018 | $100,000 |
| 12 | Victim Investor #13 | May 2019 | $25,000 |

All in violation of violation of Title 18, United States Code, Section 1343.

## COUNTS THIRTEEN THROUGH EIGHTEEN
### [18 U.S.C. § 1957]

18.    The allegations contained in paragraphs 1 through 17 of this Indictment are incorporated by reference as if fully set forth herein.

19.    On or about the dates set forth below, in the Western District of Texas and elsewhere, the Defendant,

**MARCO PEREZ, JR., AKA SULLY PEREZ**

did knowingly engage in monetary transactions by, through, and to a financial institution, affecting interstate or foreign commerce, in criminally derived property of a value greater than $10,000, such property having been derived from specific unlawful activity, that is wire fraud in violation of Title 18, United States Code, Section 1343, as follows:

| Count | Date (On or About) | Monetary Transaction |
|---|---|---|
| 13 | 09/20/2017 | $135,000 withdrawal was made from JP Morgan Chase Account XXXX6092, belonging to Permian Basin Proppants |

| Count | Date (On or About) | Monetary Transaction |
|---|---|---|
| 14 | 04/06/2018 | $45,000 drawn from Wells Fargo Account XXXXXX2983, belonging to Permian Basin Proppants, for a down payment to Sewell Ford on a 2018 Lincoln Navigator |
| 15 | 02/14/2019 | $21,435 wire from Wells Fargo Account XXXXXX0133, belonging to Permian Basin Proppants, to Topline Trailers & Services |
| 16 | 04/16/2019 | $78,000 cashier's check made payable to Hosier Consulting was drawn from Wells Fargo Account XXXXXX4533, belonging to Permian Basin Proppants |
| 17 | 05/31/2019 | $202,500 cashier's check made payable to an investor was drawn from Wells Fargo Account XXXXXX4533, belonging to Permian Basin Proppants |
| 18 | 08/24/2021 | $14,575.43 wire sent from Navy Federal Credit Union Account XXXXXX7100, belonging to Permian Basin Proppants, to Executive Flight Services |

All in violation of Title 18, United States Code, Section 1957.

## NOTICE OF GOVERNMENT'S DEMAND FOR FORFEITURE
[See FED. R. CRIM. P. 32.2]

### I.
### Wire Fraud Violations and Forfeiture Statutes
[Title 18 U.S.C. § 1343, subject to forfeiture pursuant to Title 18 U.S.C. § 981(a)(1)(C), made applicable to criminal forfeiture by Title 28 U.S.C. § 2461(c)]

As a result of the criminal violations set forth in Counts One through Twelve, the United States of America gives notice to the Defendant of its intent to seek the forfeiture of the property described below upon conviction pursuant to Fed. R. Crim. P. 32.2 and Title 18 U.S.C. § 981(a)(1)(C), made applicable to criminal forfeiture by Title 28 U.S.C. § 2461(c), which states the following:

**Title 18 U.S.C. § 981.**
(a)(1) The following property is subject to forfeiture to the United States:
\* \* \*
(C) Any property, real or personal, which constitutes or is derived from proceeds traceable to ... any offense constituting "specified unlawful activity" (as defined in section 1956(c)(7) of this title), or a conspiracy to commit such offense.

Wire Fraud is an offense constituting "specified unlawful activity" as defined in section 1956(c)(7) of this title.

## II.
## Money Laundering Violations and Forfeiture Statutes
### [Title 18 U.S.C. § 1957, subject to forfeiture pursuant to Title 18 U.S.C. § 982(a)(1)]

As a result of the foregoing criminal violations set forth in Counts Thirteen through Eighteen, the United States of America gives notice to Defendant of its intent to seek the forfeiture of the property described below upon conviction pursuant to Fed. R. Crim. P. 32.2 and Title 18 U.S.C. § 982(a)(1), which states:

> **Title 18 U.S.C. § 982. Criminal forfeiture**
> **(a)(1)** The court, in imposing sentence on a person convicted of an offense in violation of section . . . 1957. . . of this title, shall order that the person forfeit to the United States any property, real or personal, involved in such offense, or any property traceable to such property.

This Notice of Demand for Forfeiture includes, but is not limited to, the following property:

## III.
## Vehicles

1. 1992 Robinson R22 Beta Helicopter; Tail Number N2334K; serial number: 2159;
2. 2008 Lamborghini Gallardo; VIN: ZHWGU12T18LA06104;
3. 2015 BMW i8 Series Coupe 2D; VIN: WBY2Z2C53FVX64923;
4. 2013 Rolls-Royce Ghost; VIN: SCA664L5XDUX65908;
5. 2019 Ford F250; VIN: 1FT7W2BT5KEG68477;
6. 2021 Cadillac Escalade; VIN: 1GYS4CKL1MR263065;
7. 2022 Salvation Trailer; VIN: 7GG1E2020NW020235;
8. 2022 Salvation Trailer; VIN: 7GG1E2028NW017633;
9. 2022 Salvation Trailer; VIN: 7GG1E2429NW017957;
10. 2021 EGMT Trailer; VIN: 1E9GH2323MM479075; and

## IV.
## Jewelry

1. Rolex Oyster Perpetual Datejust Watch; serial number: 93L685H8;
2. "MJ" pendant gold in color with clear stones;
3. Necklace with gold in color chain and barbell pendant with clear stones;
4. Breitling watch; serial number: A24322;
5. Movado watch; serial number: 14882168;
6. Fossil watch; Model DW7F1;

7. Fossil watch; Model BQ3378;
8. Fossil watch; Model BQ3344;
9. Fossil watch; Model BQ3389;
10. Bulova watch; serial number: 20791782;
11. Invicta Pro Diver; serial number: 19157;
12. Mark Anthony; Model FMDMA120; serial number: 1F1621806;
13. Americas Navy; serial number: PC21AE;
14. Breitling with charger; serial number: 1557076; and

V.
**Currency**

1. $222,512.02, More or Less, in United States Currency seized from Bluevine Capital account# XXXXXXXX3978;
2. $30,507.56, More or Less, in United States Currency seized from Navy Federal Credit Union account# XXXXXX7782;
3. $204,688.86, More or Less, in United States Currency seized from Navy Federal Credit Union account# XXXXXX7100;
4. $774.84, More or Less, in United States Currency seized from Navy Federal Credit Union account# XXXXXX9097 and XXXXXX5881; and

VI.
**Cryptocurrency**

1. Bitcoin (BTC)- approximately 3.12116715 BTC;
2. Ripple (XRP)- approximately 1,508.023319 XRP;
3. Cosmos (ATOM)- approximately 129.044198 ATOM;
4. Tezos (XTZ)- approximately 88.988168 XTZ;
5. Litcoin (LTC)- approximately 17.47765888 LTC;
6. Ethereum (ETH)- approximately 5.66666987 ETH;
7. Dogecoin (DOGE)- approximately 8,689.2572856 DOGE; and
8. Shiba Inu (SHIB)- approximately 17,292,503.70518626 SHIB.

A TRUE BILL

_____
FOREPERSON

ASHLEY C. HOFF
United States Attorney

By: _____
JOHN A. FEDOCK
Assistant United States Attorney